GILBERT J. HEALEY *vs.* THOMAS ASPINWALL.

Suffolk.    March 12, 1907. — May 15, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Malicious Prosecution.*

At the trial of an action for malicious prosecution, there was undisputed evidence that the defendant caused a warrant to issue against the plaintiff charging an assault and battery by the plaintiff upon the defendant, that after a trial the plaintiff was acquitted, that before initiating the proceedings the defendant had consulted counsel and had been advised by him that there was ground for making the complaint, but the evidence was conflicting as to whether the plaintiff committed any assault upon the defendant and as to whether the facts which the defendant stated to his counsel and to the court in procuring the warrant were true. *Held*, that the questions whether an assault was committed, or, if not committed, whether the defendant made a fair and full disclosure to his counsel, and, after receiving advice, acted in good faith believing that the crime had been committed or that there was probable cause for thinking that it had been, were for the jury.

TORT for malicious prosecution. Writ in the Superior Court for the county of Suffolk dated March 9, 1904.

At the trial before *Hardy*, J. the plaintiff and his mother testified in his behalf, and their testimony tended to prove

that the defendant caused a warrant to issue from the Municipal Court of the City of Boston, charging the plaintiff with committing assault and battery upon the defendant on February 4, 1904; that the plaintiff was not arrested on the warrant but merely summoned to court, that he was tried on the charge and acquitted; that on February 4, 1904, the plaintiff with his mother, who had some difficulty in walking and always carried an umbrella for use as a cane, were in the Park Street station of the subway in Boston between half past five and six in the afternoon, that the subway was crowded and they had to let several cars pass before taking one, that they worked their way through the crowd, not pushing any more than was necessary, the plaintiff having his hand under his mother's elbow, assisting her, they keeping together, and finally they boarded the rear platform of a car; that the plaintiff did not see the defendant in the subway until he made an outcry, did not strike him, did not roughly or recklessly jump or bump against him; that the defendant was in the same car with the plaintiff and his mother and got off when they did and followed them, whereupon the plaintiff asked him what he wanted, and, upon being told that the defendant wanted his name and address, gave them ; that, in response to a question by the plaintiff, the defendant replied that he represented several women whom the plaintiff had assaulted in the subway; that then there was a heated altercation between the two, but no assault.

The defendant, testifying in his own behalf, stated that on the occasion in question in the subway he saw the plaintiff, unaccompanied, forcing his way violently along the side of the car he afterwards boarded, from the front toward the rear, using his elbows to clear the way; that the plaintiff struck him a violent blow in the side with his elbow and knocked him backward into the crowd, and then went forward and engaged in a violent struggle with another man, boarded the car and had an altercation with a third man; that when he saw the plaintiff struggling with the third man he called out "Arrest that man," and afterward made attempts as the car proceeded on its way to procure a policeman for that purpose; that after the plaintiff got on the car the defendant for the first

time observed the woman with him, whom he afterward learned was the plaintiff's mother; that the defendant left the car with the plaintiff and his mother and asked the plaintiff for his name which was given, and, the plaintiff's mother inquiring, he stated. that he intended to prosecute the plaintiff for assaulting him and several women in the subway, that there was then some wordy altercation, which the plaintiff's mother stopped; that subsequently the defendant spoke to his next door neighbor, one Sergeant, the vice-president of the Boston Elevated Railway Company, about the matter, and on his advice consulted Roger Wolcott, Esquire, an attorney at law, to whom he stated fully the facts as given in court in his testimony at the trial of the plaintiff on the charge of assault and battery, as well as the fact that he believed that the plaintiff's mother got on to the car at the front platform, and that said Wolcott advised him that he had grounds for a complaint against the plaintiff for assault; that he had not the least feeling of malice toward the plaintiff. The defendant's testimony was corroborated by testimony by Roger Wolcott, Esquire, as to the consultation with and advice by him.

At the close of the evidence, under direction of the presiding judge and subject to exception by the plaintiff, the jury returned a verdict for the defendant.

*J. H. Hurley*, for the plaintiff.

*E. P. Saltonstall*, (*S. H. E. Freund* with him,) for the defendant.

HAMMOND, J. The defendant testified in substance that he received a violent blow in his side from the plaintiff's elbow, and was knocked back upon the people behind him; and this was the assault for which the defendant initiated criminal proceedings against the plaintiff. At the trial of the present case the evidence as to whether the plaintiff did thus strike the defendant, or indeed whether there was any collision whatever between them, was conflicting, and without going into details it is sufficient to say that it would have warranted a finding either way on that matter. If there was no assault or collision, that fact in connection with the other evidence would have justified a jury in finding that the defendant knew it, and hence that he prosecuted the plaintiff for an assault which he

knew had not been committed. Still further, the jury might have found that the statements made by the defendant to his counsel and to the magistrate who granted the warrant were not true and were known by him not to be true.

While upon the evidence, if the case had been submitted to the jury, a verdict for the defendant might reasonably have been expected as the righteous outcome, still in this conflict of evidence it was the province of the jury and not of the court to find where the truth lay. We are of opinion that the questions whether an assault was committed, or, if not committed, whether the defendant had probable cause to think that it had been, whether the defendant made a fair and full disclosure to his advisers, and whether after receiving the advice he acted in good faith believing that the crime had been committed or that there was probable cause for thinking it had, were all for the jury. And this is so, notwithstanding the fact that the burden of showing malice and want of probable cause was upon the plaintiff.

*Exceptions sustained.*